[No. 18867.   Department One.   January 9, 1925.]

# J. L. ACKERSON, *as Receiver of First National Bank of St. John, Respondent,* v. FRANK B. BABCOCK *et al., Defendants,* SECURITY NATIONAL BANK OF CHENEY, *Appellant.*[1]

PLEDGES (3) — DELIVERY AND POSSESSION — WHEAT DELIVERED AT WAREHOUSE WITHOUT RECEIPTS. There was no delivery of the land-lord's one-third of a crop of wheat, orally pledged as security for his debt pursuant to an invalid unrecorded written assignment, sufficient to constitute a valid pledge prior to its attachment as the property of the landlord, where the warehouseman was simply noti-fied to receive the share as the property of the pledgee as it was hauled to the warehouse by the tenant, and to issue warehouse receipts therefor, but no such receipts were issued or delivered to the pledgee prior to the levy of the writ and no communication passed between the warehouseman and the parties other than a loose oral message through a third person to issue receipts in the name of the pledgee (PEMBERTON, J., dissenting).

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered May 12, 1924, upon findings in favor of the plaintiff, upon an adverse claim to attached property, upon a trial to the court. Affirmed.

*Charles P. Lund,* for appellant.

*Samuel P. Weaver (Ross C. Fisher,* of counsel), for respondent.

TOLMAN, J.—This action was commenced by the First National Bank of St. John, to recover upon a promissory note made by the defendants, and a writ of attachment was sued out and levied upon certain wheat in the warehouse of the Milwaukee Grain Ele-vator Company, at Ewan, in Whitman county. While the action was pending, respondent was appointed re-ceiver of the bank, and he has been substituted as plain-

[1]Reported in 232 Pac. 335.

tiff. Shortly after the levy of the writ of attachment, the appellant, under the claim and delivery statute, filed its affidavit and bond and secured possession of the wheat. The issues thus raised by the claimant came on for trial before the court sitting without a jury, resulting in findings and a judgment denying its claim, from which judgment this appeal is prosecuted.

It appears that the defendants Babcock had been, for several years, indebted to the Security National Bank of Cheney; and on October 1, 1922, that indebtedness amounted to $2,650, evidenced by a promissory note for that amount. Following that, the Babcocks made a deed to R. H. Macartney, the cashier of the Security National Bank, which deed they caused to be recorded, and thereafter delivered it to Macartney as security for the indebtedness to his bank. The making of the deed was unknown to the bank or its officers until it was so delivered. At the time of making the deed, the land described therein was under lease from Babcock to one A. L. Anderson, the rent reserved being one-third of the crop to be raised, with a provision that the landlord's share be delivered to a warehouse or elevator at Ewan, Washington. Shortly after the delivery of the deed just mentioned, Babcock assigned the lease just referred to to Mr. Macartney, also as security for the same debt; but the assignment was not filed nor recorded, did not contain any affidavit of good faith as required by the statute governing chattel mortgages, and admittedly the delivery thereof to the officers of the Security National Bank did not perfect in the bank a lien on the wheat in question. But there seems to have been an oral agreement between the bank officials and Babcock that the landlord's share of the crop should be delivered to the Security National Bank as security for the indebtedness. The bank officials gave no direction as to how the wheat should be de-

livered, except that Mr. Macartney testified that he asked Mrs. Babcock to see that the wheat was delivered to him at the warehouse; but there is no claim that Mr. Macartney, on behalf of the bank, or anyone else ever made any arrangements with the warehouseman to receive the wheat for the bank.

During the harvesting season of 1923, Mrs. Babcock asked her son to notify the warehouseman to receive the landlord's share of the crop from the tenant in the name of Mr. Macartney, and to issue receipts therefor to Mr. Macartney. This message was delivered to the warehouseman by the son, and the tenant being informed to the same effect, he also, when he began to haul the wheat, advised the warehouseman that he supposed the landlord's share was to go to Mr. Macartney, and receipts were to be issued to him therefor. Receipts were not issued as the wheat was delivered, among other reasons therefor being that the landlord's one-third could not be accurately determined until the whole amount was delivered to the warehouse. From day to day as deliveries were made, memorandums were made designating the wheat as that received from Anderson, the tenant, without mention of the landlord's share. The crop of grain consisted of two varieties, Early Bart and Bluestem. The Early Bart was first delivered, and apparently completely delivered by October 26, 1923. Thereafter the Bluestem was delivered, and probably it was all delivered by the time the levy was made, which was October 30, 1923. The warehouseman wrote a receipt for one-third of the Early Bart wheat in favor of Mr. Macartney, but it is not clear from the testimony whether this receipt was issued at the time of, or before or after the levy of the writ. Though examined and cross-examined upon that question, the warehouseman refused to commit himself, and the trial court, without so finding, seems to have

been inclined to the view that this warehouse receipt was issued either at the time of the levy of the writ of attachment or immediately afterwards. No warehouse receipt was issued for the Bluestem wheat, and the one issued for the Early Bart was never delivered to Mr. Macartney, or to anyone for him or for his bank.

The sole question in this case is whether there was such a delivery of the wheat as would constitute it a valid pledge in the hands of the appellant.

The trial court in his memorandum opinion, after reciting the facts, said:

"Under these circumstances, can it be said the wheat was delivered to claimant or to Mr. Macartney, prior to the attachments. I think not. Taking the testimony as a whole, I am convinced that had no attachment intervened Babcock could have successfully demanded of the warehouse company the landlord's share of this wheat at any time before the delivery of the warehouse receipts to claimant. And this I think is the test or one of the tests by which this question may be determined.

"There was never any communication between the warehouseman and claimant nor any agreement or understanding between the three that delivery was to be made or how it was to be made. Claimant did not even know where the wheat was to be delivered or when. The Warehouse company did not know anything about the assignment of the lease. Mr. Babcock's son had merely directed the issuance of the receipts to Macartney. In fact, the arrangement was rather loosely carried on and the instructions to the warehouse manager were vague and uncertain.

"As there was no contractual relationship nor privity between the warehouse company and the claimant, there could be no obligation on the part of the company to claimant until full and final delivery of the receipts to claimant or its representatives, and neither the company nor Mr. Lee was its representative. As far as the company was concerned, Babcock could have changed or revoked his direction as to the issuance of receipts to Macartney at any time before their actual

delivery, in which event claimant would have had no recourse against the warehouse company.'''

Appellant in its brief quotes and seems to rely upon 21 R. C. L. 644, paragraph 11:

"What will amount to a sufficient delivery of a pledge is often a nice question of law and fact, but the general criterion is that the delivery should be as complete as the nature of the article bailed admits of. The pledgee's possession, to be effective either for notice or to give validity at law to the pledge, must be complete, unequivocal, and exclusive of the pledgor's possession in his own right . . . [the remainder of the same paragraph is quoted by respondent in his brief, and reads] and the mere setting of a portable article aside, or the pledgor consenting to bail it as the bailee of the other, there being in fact no transfer of the custody, however such acts might in case of a sale amount to delivery, is not sufficient in case of a pledge or pawn, the very essence of which is deposit. Where property is pledged, the delivery need not be made contemporaneously with the pledge, and, if made thereafter, it relates back to the date when the contract or pledge was made."

The question of delivery is, indeed, a "nice question" here; and as some aid in solving it, let us see if appellant has brought itself within the terms of the rule which it quotes. All that was done here was done by the would-be pledgor, without any participation upon the part of the pledgee. What was done was to deliver a somewhat loose oral message through third persons to the effect that receipts were to be issued in Mr. Macartney's name, and nothing more. There was no information to the warehouseman that the intent was to vest title and control in Macartney, or that the receipts when written should be delivered to him, or anyone other than the Babcocks; nor was there any intimation that the Babcocks had parted with title or control. Had the Babcocks asked for the receipts (though

written in Macartney's name) undoubtedly they would have received them; and, if so, and on proof that they had never been delivered to Macartney, they might perhaps, on later surrender of these receipts, have induced the warehouseman to issue others in lieu thereof, which they could have negotiated.

Again, appellant quotes from paragraph 12 of the same book and page:

"The rule that there must be a delivery of the pledged property to the pledgee does not require that the delivery should in all cases be manual. It may be either constructive or symbolic, if the pledgee is clothed with all the usual muniments of title and indicia of ownership."

Was the pledgee here clothed "with all the usual muniments of title and indicia of ownership"? We think not, unless and until the warehouse receipts were delivered to it, or someone authorized by it to receive them. Here there was no claim that Mr. Macartney had made the warehouseman his agent to hold or transmit the warehouse receipts, or in any wise agreed that he should be a trustee in the matter, and we think appellant in its evidence has failed to show a necessary and vital element indicated as necessary by the quotations referred to.

It is useless to cite and discuss cases. The rule to be applied is not in doubt, and the facts of each case determine whether or not it comes within the rule. The question here is an exceedingly close one upon which equally fair and well informed minds might easily differ, but we are constrained to agree with the trial court.

The judgment appealed from is affirmed.

MAIN, C. J., BRIDGES, and MACKINTOSH, JJ., concur.

PEMBERTON, J. (dissenting)—The wheat was pledged and not subject to attachment. I dissent.